UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
UNITED STATES OF AMERICA,                              :
:                **MEMORANDUM & ORDER**
         v.                                            :  22-CR-88 (WFK)
:
DWAYNE GOLDEN,                                         :
:
                          Defendant.                   :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On September 16, 2024, Defendant pled guilty to both counts of a two-count Superseding Information, charging him with (1) Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 371; and (2) Money Laundering, in violation of 18 U.S.C. § 1957(a). Plea Agreement ¶ 1, ECF No. 162; *see generally* Superseding Information, ECF No. 160. The Court now sentences Defendant and provides a complete statement of reasons, under 18 U.S.C. § 3553(c)(2), of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to ninety-seven (97) months' imprisonment on Counts One and Two; to be followed by three (3) years' supervised release, with both the standard and special conditions of supervision, to run concurrently; forfeiture in the amount of $2,460,000.00, as set forth in the Order of Forfeiture; and payment of a mandatory special assessment of $200.00.

**I.    Background**

In April 2017, co-conspirators Dwayne Golden, Marquis Demacking Egerton, and Co-Conspirator #2 formed "EmpowerCoin," a web-based company purporting to offer cryptocurrency investments. Sealed Presentence Investigation Report ("PSR") ¶ 5. In May 2017, the co-conspirators, together with others, formed "Jet-Coin." *Id.* ¶ 6. Like "EmpowerCoin," "Jet-Coin" was a web-based company purporting to offer cryptocurrency investments. *Id.* The co-conspirators promised these companies would use investors' money to purchase Bitcoin, generating large returns. *Id.* ¶ 13. But the companies never actually purchased Bitcoin or engaged in trading activity of any kind. *Id.* Instead, the co-conspirators stole investors' money or used it to repay other investors. *Id.* Defendant, Egerton, and Co-Conspirator #2 operated EmpowerCoin and ECoinPlus; Defendant, Aggesen, Co-Conspirator #1, and Co-Conspirator #2 operated Jet-

Coin. *Id.* ¶¶ 15–16. Defendant took part in writing and editing fraudulent content for the companies' websites. *Id.* ¶ 15; Gov't Sent'g Mem. at 2.

Following repeated complaints from investors about the lack of returns, the co-conspirators renamed EmpowerCoin to "ECoinPlus." *Id.* ¶ 19. The fraudulent activity continued under the "ECoinPlus" name. *Id.* When investors complained about "Jet-Coin," the co-conspirators claimed the website was suffering from technical difficulties and had been hacked. *Id.* ¶ 20. "EmpowerCoin" and "ECoinPlus" received a collective $23.2 million from investors. *Id.* ¶ 22. "Jet-Coin" received $21.7 million from investors. *Id.* Defendant personally received approximately $2.46 million from investors across the schemes. Gov't Sent'g Mem. at 3.

When EmpowerCoin and Jet-Coin collapsed, Defendant discussed starting new fraudulent schemes with his co-conspirators. *Id.* at 2. For example, in September 2017, Defendant suggested to co-defendant Egerton they start a new company called "XtremCoin." *Id.* In January 2018, Defendant sent a recorded message to co-defendant Aggesen saying: "I'm trying to put things in place faster. Speed means making better money and making better crimes." *Id.* at 2–3.

In February 2018, the Federal Trade Commission ("FTC") filed a complaint as part of an investigation into "Jet-Coin." PSR ¶ 24. The FTC served a subpoena on co-defendant Aggesen seeking testimony and documents related to "Jet-Coin." *Id.* Around the same time, Defendant and Aggesen recruited co-defendant White to erase information related to "Jet-Coin" from Aggesen's laptop. *Id.* ¶ 25. White then sent a laptop to the FTC, claiming it to be Aggesen's laptop. *Id.* A forensic examination revealed the laptop had been tampered with, and information on it had been deleted. *Id.*

2

*Procedural History*

On March 3, 2022, a grand jury returned an eleven-count Indictment against Defendant and his four co-defendants: William White, Gregory Aggesen, Marquis Demacking Egerton, and John Doe. *See generally* Indictment, ECF No. 1. On March 8, 2022, Defendant was arrested in Pennsylvania. PSR ¶ 30. On September 16, 2024, Defendant pled guilty to both counts of a two-count Superseding Information, filed on the same day, which charged him with (1) Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 371, and (2) Money Laundering, in violation of 18 U.S.C. § 1957(a). Plea Agreement ¶ 1. Pursuant to the plea agreement, Defendant agreed not to file an appeal or otherwise challenge his sentence if the Court imposed a term of imprisonment of 121 months or below. *Id.* ¶ 4.

**II.     Legal Standard**

Congress set forth the procedures for imposing a sentence in a criminal case in 18 U.S.C. § 3553. Together with 18 U.S.C. § 3553, the United States Federal Sentencing Guidelines operate as the "starting point and the initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.* The court's statement of reasons "shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citation omitted).

When determining the appropriate sentence, the court must consider seven different factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established by the Guidelines; (5) any pertinent policy statements issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among similar defendants found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense. *See* 18 U.S.C. § 3553(a). The Court now addresses each factor in turn.

### III. Analysis

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

1. *Family and Personal Background*

Defendant was born on November 13, 1964, in Harrisburg, Pennsylvania. PSR ¶ 61. Defendant's father worked as a plumber and passed away in 2021 from COVID-19. *Id.* Defendant's mother was diagnosed with dementia when she was fifty-eight years old and passed away at age seventy in 2011. *Id.* Defendant has six siblings. *Id.* ¶ 62. He is close with each of his siblings and in regular communication with them. *Id.* Defendants' siblings are aware of the instant case and remain supportive of Defendant. *Id.*

Defendant grew up under difficult circumstances. *Id.* ¶ 63. He was raised under low-income socioeconomic conditions and moved frequently across the United States due to his parents' tumultuous relationship. *Id.* Defendant's father was a violent alcoholic who physically abused Defendant's mother, Defendant, and Defendant's siblings. *Id.* Defendant's mother often

sought refuge at domestic violence shelters. *Id.* Defendant's mother attempted suicide multiple times during his childhood because of his father's abuse. *Id.* Defendant's father became sober during Defendant's adulthood, and the two men were able to rebuild their relationship. *Id.* Defendant also reports experiencing racism growing up; he and his siblings were often the only Black students at their schools. *Id.*

Defendant married his current partner on January 9, 1988. *Id.* ¶ 64. His partner is in good health, despite a diagnosis of high blood pressure and recent reports of melanoma lesions. *Id.*; *see also* Def. Sent'g Mem. at 20; Ex. H to Def. Sent'g Mem. Defendant's partner is employed as a cleaner. PSR ¶ 64. Defendant and his partner have three grown sons, each of whom are married with their own children. *Id.*

In the summer of 1989, Defendant enlisted in the United States Army. *Id.* ¶ 65. He served in the Army until August 1991, when he was honorably discharged due to serious health complications. *Id.*; *see infra* Section III.A.4.

### 2. *Educational and Employment History*

In 1983, Defendant graduated from Hammond Baptist High School. *Id.* ¶ 83. In 1988, he obtained his medical assistant certificate from the Academy of Medical Arts and Business. *Id.* ¶ 82. In 1998, he obtained his bachelor's degree from Messiah University. *Id.* ¶ 81. In 2005, he obtained his MBA degree from Strayer University. *Id.* ¶ 80.

From 1980 to 1987, Defendant worked various service jobs. *Id.* ¶ 87. From 1987 to 2002, excepting his service in the army, Defendant worked as a medical assistant and salesperson for various companies in Pennsylvania. *Id.* From 1989 to 1991, Defendant was enlisted in the United States Army. *Id.* ¶¶ 78–79; *see supra* Section III.A.1. From 2002 to 2005, he worked as a grants and event manager for Highmark Foundation in Pittsburgh, Pennsylvania. *Id.*

In 2005, Defendant started a business consultancy firm named D. Golden & Associates. *Id.* ¶ 87. In 2017, Defendant and his co-conspirators created and operated the web-based fraudulent companies at issue in this case. *Id.* ¶ 86. Additionally, from 2020 to 2024, Defendant volunteered for South Central Pennsylvania Sickle Cell Council in Harrisburg, Pennsylvania. *Id.* ¶ 86. Defendant has been unemployed since November 2024. *Id.* ¶ 85. He is financially supported by his military veteran's benefits. *Id.*

### 3. *Prior Convictions*

Defendant has one prior conviction. In 1992, at age 27, Defendant was convicted of fraudulent use of a social security number. *Id.* ¶ 55. While working as a car salesman, Defendant used the dealership's computer to create new social security numbers for himself and his wife. *Id.* Defendant sought to evade the poor credit history connected to his own social security number, and he used the fraudulently created social security number to procure a loan. *Id.* Defendant was sentenced to two years' probation with mandatory restitution. *Id.*

   4. *Physical and Mental Health*

Defendant suffers from a number of physical health conditions, including: aplastic anemia, myelodysplastic syndrome, avascular necrosis, hepatitis C, hemorrhoids, peripheral neuropathy, a herniated disk in his spine, and neuropathy. *Id.* ¶ 70.

Defendant's aplastic anemia—a rare and serious blood condition where the immune system attacks the body's bone marrow and causes the underproduction of new blood cells—has caused chronic infections and necrosis on his legs; he has been frequently hospitalized and received multiple skin grafts due to this condition. *Id.*; *see also* Def. Sent'g Mem. at 8. Defendant contracted hepatitis C after receiving a contaminated blood transfusion. Def. Sent'g Mem. at 9. He is prescribed various medications to treat his health conditions. PSR ¶ 70.

Defendant has suffered new medical ailments since pleading guilty to the instant offense. In December 2024, Defendant was diagnosed with an *H. pylori* bacterial infection in his stomach, requiring an intensive course of antibiotics. *Id.* ¶ 71. Defendant's recent colonoscopy uncovered seven polyps, increasing his risk of colorectal cancer. Def. Sent'g Mem. at 24.

Defendant sought mental health treatment between 1991 and 2001. PSR ¶ 73. Defendant reports he "wanted to die" during the 1990s, when he was "constantly hospitalized for his various health ailments" because of his great pain and suffering. *Id.* ¶ 74. However, he denies presently having any suicidal ideation. *Id.* ¶ 75.

   5. *Substance Abuse*

Defendant has never had alcohol. *Id.* ¶ 77. Between 1991 and 1994, Defendant was hospitalized due to his aplastic anemia and avascular necrosis, at which time he received Demerol, Codeine, and Dilaudid as pain medications. *Id.* ¶ 76. Defendant reports he became

7

addicted to these medications for several years but was able to end his prescription drug use in 2001. *Id.*

      6.    *Nature and Circumstances of the Offense*

The Court's previous statements address the nature and circumstances surrounding the instant offense. *See supra* Part I.

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's conduct. Defendant launched and operated three fraudulent cryptocurrency companies, stealing over two million dollars from online investors. Defendant recruited co-conspirators to aid his financial theft and cover up evidence of wrongdoing. The Court's sentence will deter others from engaging in similar conduct and justly punish Defendant for his crimes. Accordingly, the Court's sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in this factor. 18 U.S.C. § 3553(a).

**C. The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3). Defendant pled guilty to both counts of a two-count

Superseding Information, charging him with (1) Conspiracy to Commit Wire Fraud and (2) Money Laundering. Plea Agreement ¶ 1.

Count One: Conspiracy to Commit Wire Fraud

Defendant faces a maximum term of five years' imprisonment and no minimum term. 18 U.S.C. § 371. Defendant also faces a maximum term of three years' supervised release. 18 U.S.C. § 3583(b)(2). If a condition of release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. §§ 3583(b), (e). Defendant is eligible for one- to five- years' probation. 18 U.S.C. § 3561(c)(1). In the absence of extraordinary circumstances, the Court must impose one of the following as a condition of probation: a fine, restitution, or period of community service. 18 U.S.C. § 3563(a)(2).

Count Two: Money Laundering

Defendant faces a maximum term of ten years' imprisonment and no minimum term. 18 U.S.C. § 1957. Defendant also faces a maximum term of three years' supervised release. 18 U.S.C. § 3583(b)(2). If a condition of release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. §§ 3583(b), (e). Defendant is eligible for one- to five- years' probation. 18 U.S.C. § 3561(c)(1). In the absence of extraordinary circumstances, the Court must impose one of the following as a condition of probation: a fine, restitution, or period of community service. 18 U.S.C. § 3563(a)(2).

Other Penalties

In addition to terms of imprisonment and supervised release, Defendant faces financial penalties. For both counts, Defendant faces a maximum fine of the greater of $250,000.00 or

twice the gross gain or twice the gross loss, which he appears unable to pay. 18 U.S.C. § 3571(b); PSR ¶ 94. Defendant faces criminal forfeiture as stipulated to in the plea agreement. 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 21 U.S.C. § 2461(c); Plea Agreement ¶¶ 7–15 (setting forth the entry of a forfeiture money judgment in the amount of $2,460,000.00). Defendant also faces administrative bar or enforcement proceedings brought by the United States Commodity Futures Trading Commission including, but not limited to, disgorgement of ill-gotten gains and civil penalties. Plea Agreement ¶ 1. Finally, the Court is required to impose a mandatory special assessment of $100.00 per count pursuant to 18 U.S.C. § 3013(a)(2)(A), for a total of $200.00.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . [t]he applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

For Count One, the applicable Guideline for Conspiracy to Commit Wire Fraud is U.S.S.G. 2X1.1(a). U.S.S.G. 2X1.1(a) directs the Court to use the Guideline for the base offense level for the substantive underlying offense; in this case, U.S.S.G. 2B1.1 (fraud). U.S.S.G. 2B1.1 provides a base offense level of six (6). Twenty levels are added because the resulting loss exceeded $9.5 million. U.S.S.G. §2B1.1(b)(1)(K). Another two levels are added, as the offense involved ten or more victims. U.S.S.G. §2B1.1(b)(2)(A)(i). Another two levels are added because Defendant used sophisticated means to carry out the criminal conduct. U.S.S.G. §2B1.1(b)(10)(C). Another two levels are added, as Defendant instructed co-defendant White to erase information from co-defendant Aggesen's laptop, constituting obstruction of justice under U.S.S.G. §3C1.1. These adjustments result in an adjusted offense level for Count One of thirty-two (32).

For Count Two, the applicable Guideline for Money Laundering is U.S.S.G. §2S1.1. U.S.S.G. §2S1.1(a)(1) directs the Court to reference U.S.S.G. §2B1.1 for the underlying offense (fraud) to determine Defendant's base offense level. U.S.S.G. 2B1.1 provides a base offense level of six (6). *See* U.S.S.G. §§2S1.1(a)(1); 2B1.1(a)(2). Twenty levels are added because the resulting loss exceeded $9.5 million. U.S.S.G. §2B1.1(b)(1)(K). Another two levels are added, as the offense involved ten or more victims. U.S.S.G. §2B1.1(b)(2)(A)(i). Another two levels are added because Defendant used sophisticated means to carry out the criminal conduct. U.S.S.G. §2B1.1(b)(10)(C). Another two levels are added because Defendant instructed co-defendant White to erase information from co-defendant Aggesen's laptop, constituting obstruction of justice under U.S.S.G. §3C1.1. Another level is added, as Defendant was convicted under 18 U.S.C. § 1957(a). *See* U.S.S.G. §2S1.1(b)(2)(A). These adjustments result in an adjusted offense level for Count Two of thirty-three (33).

Counts One and Two are grouped because one of the counts "embodies conduct . . . treated as a specific offense characteristic in, or other adjustment to, the [G]uideline applicable to another of the count(s)." U.S.S.G. §3D1.2(c); *see also* U.S.S.G. §2S1.1 n.6 ("In a case in which the defendant is convicted of a count of laundering funds and a count for the underlying offense from which the laundered funds were derived, the counts shall be grouped pursuant to subsection (c) of §3D1.2"). Count One (Conspiracy to Commit Wire Fraud) comprises the substantive conduct underlying Count Two (Money Laundering). When multiple counts are grouped, U.S.S.G. §3D1.3(a) directs the Court to use the highest offense level of the grouped counts; in this case, 33.

Three offense levels are subtracted for Defendant's timely acceptance of responsibility. U.S.S.G. §3E1.1(a)–(b). Another two offense levels are subtracted for Defendant's status as a

zero-point offender. U.S.S.G. §4C1.1. these reductions result in a total offense level of twenty-eight (28).

The parties argue Defendant has a criminal history category of I, which, together with a total adjusted offense level of twenty-eight (28), results in a recommended Guidelines range of 78–97 months' imprisonment. Defense counsel also argues the loss enhancement overstates Defendant's culpability.

Probation recommends the Court impose a below-Guidelines sentence of seventy (70) months' imprisonment on each count, to run concurrently; two years' supervised release on each count, to run concurrently; and the mandatory $200.00 special assessment. Sealed Prob. Sent'g Rec. at 1, ECF No. 173-1. The Government recommends a top-of-the-Guidelines sentence. Gov't Sent'g Mem. at 1. Defense counsel recommends a "substantially below Guidelines" sentence. Def. Sent'g Mem. at 2, 27. The Court appreciates the sentencing arguments raised by all parties and has considered each in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Defense counsel raises policy concerns regarding Defendant's physical condition and age. First, without citing the specific policy statement—U.S.S.G. §5H1.4 ("Physical Condition")—defense counsel urges the Court to consider Defendant's severe health conditions when imposing any custodial sentence. *See* Def. Sent'g Mem. at 21–25. Defense counsel argues Defendant's health "poses serious risks to him in the BOP environment," particularly given Defendant's history of soft-tissue infections in his legs. *Id.* at 21. Defense counsel also raises

concerns about Defendant contracting a MRSA infection while in custody. *Id.* at 23. Such an infection would "need[] immediate attention and can promptly result in death if not treated." *Id.*

Second, again without citing the specific policy statement—U.S.S.G. §5H1.1 ("Age")—defense counsel argues the Court should consider Defendant's status as an "[o]lder prisoner" when imposing any custodial sentence. *Id.* at 25.

Probation recommends the Court consider Defendant's traumatic childhood and extensive physical health conditions as mitigating personal circumstances. PSR ¶ 111.

The Government argues "[t]he health issues [Defendant] cites as meriting a downward variance do not meet the standard for such leniency under the Guidelines." Gov't Sent'g Mem. at 10. The Government contends the Guidelines, including policy statement U.S.S.G. §5H1.4, only permit leniency for medical conditions that "make it less likely the defendant will re-offend." *Id.* The Government argues "that is not the case here" because "[Defendant] committed his offenses while suffering from substantially the same medical conditions he has today." *Id.*

The Court has duly considered each of the parties' arguments.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defense counsel argues a "below-Guidelines sentence will avoid unwarranted sentencing disparities." Def. Sent'g Mem. at 19. Defense counsel, citing the United States Sentencing Commission's Interactive Data Analyzer, states judges are "more likely to vary below the

Guideline[s] range[s] in [U.S.S.G.] §2B1.1 cases [involving fraud] than in the average federal criminal case." *Id.* at 19–20.

The parties have not raised arguments regarding unwarranted sentencing disparities among the co-defendants in this case. On April 23, 2025, this Court sentenced Defendant's co-defendant, William White, to thirty (30) months' imprisonment for Conspiracy to Obstruct Justice in violation of 18 U.S.C. § 1512(k). *United States v. White*, 22-CR-88, Judgment as to William White, ECF No. 185. The Government notes the differences between Defendant and co-defendant White: "Unlike [Defendant], White was not involved in the fraud. It was [Defendant] who recruited White, not the other way around." Gov't Sent'g Mem. at 8. For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution is mandatory in this case under 18 U.S.C. § 3663A. The Court reserves its right under 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within ninety (90) days after this sentencing to determine issues of restitution.

### IV.   Conclusion

For the reasons set forth above, the Court sentences Defendant to ninety-seven (97) months' imprisonment on Counts One and Two; to be followed by three (3) years' supervised release, with both the standard and special conditions of supervision, to run concurrently; forfeiture in the amount of $2,460,000.00, as set forth in the Order of Forfeiture; and the mandatory $200.00 special assessment. This sentence is sufficient but no greater than necessary

to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine given Defendant's apparent inability to pay.

The Court expressly adopts the factual findings of the Sealed Presentence Investigation Report and the Addenda thereto, as corrected herein, to the extent those findings are not inconsistent with this opinion.

SO ORDERED.

/s/ William F. Kuntz, II
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: June 27, 2025
       Brooklyn, New York

15